IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

KYLE BALJO,

                Plaintiff,

    v.                                                                                         OPINION and ORDER

ANDREW SAUL,                                                             19-cv-318-jdp
    Commissioner of the Social Security Administration,

                Defendant.
_____

       Plaintiff Kyle Baljo seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Baljo not disabled within the meaning of the Social Security Act. Baljo contends that the administrative law judge (ALJ), Laurence E. Blatnick, erred by: (1) failing to adequately consider Baljo's subjective complaints; and (2) failing to resolve an apparent conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*. Because the court agrees with the first contention, the court will remand the case for further proceedings. The oral argument scheduled for December 13, 2019, is canceled.

## ANALYSIS

       Baljo seeks benefits for disability beginning on January 1, 2009, when Baljo was 26 years old. In a May 2018 decision, the ALJ found that Baljo suffered from three severe impairments: (1) diabetes with neuropathy and retinopathy; (2) status post left humerus fracture (shoulder pain caused by a 2014 injury); and (3) a low back disorder (caused by multiple injuries from lifting heavy objects). In light of these impairments, the ALJ found in his residual functional capacity assessment (RFC) that Baljo can perform light work, with the

additional restrictions that he can lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently; he can sit for six hours and stand and walk for two hours but needs to change positions every 30 to 45 minutes for three to five minutes at a time; he cannot climb ladders, ropes, or scaffolds; and he can occasionally climb ramps. R. 31.[1] Relying on the testimony of a vocational expert, the ALJ found that Baljo could perform his past job as a cashier as it is generally performed, as well as other light jobs, such as information clerk, marker, and inspector/sorter.

## A. Subjective complaints

Baljo testified about his limitations at the hearing. Discussing his diabetes, Baljo said that he has difficulty controlling his blood sugar and that he has "lows and highs throughout the day." R. 53. Low blood sugar makes him shaky, disoriented, and unable to concentrate. High blood sugar makes him "really tired" to the point that he falls asleep. R. 53 and 61. Because of his neuropathy, he needs to elevate his legs several times a day for 15 to 30 minutes. R. 54. His back and shoulder issues make it difficult for him to stand more than 10 minutes at a time or sit for more than 30 to 45 minutes. R. 53.

Both the ALJ and the parties have assumed that Baljo would be disabled if his description of his symptoms is accurate. But using boilerplate that it appears in many Social Security administrative decisions, the ALJ stated that Baljo's testimony was "not entirely consistent with the medical evidence and other evidence in the record." R. 35. Despite criticizing similar boilerplate in multiple opinions, *e.g., Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016), the court of appeals has declined to reverse an ALJ's decision for using the

---

[1] Record cites are to the administrative transcript, located at Dkt. 8.

boilerplate, so long as "the ALJ otherwise identifies information that justifies the credibility determination." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014).

As Baljo points out, it is difficult to determine in this case what information the ALJ relied on to support his determination regarding Baljo's subjective complaints. No portion of the decision is expressly devoted to that issue. Rather, most of the decision is a description of the medical evidence with little analysis of it, so it is not always clear when the ALJ is relying on a particular piece of evidence to question Baljo's subjective complaints and when the ALJ is simply summarizing the record.

It is well established that one of the ALJ's key duties is to "build a logical bridge" from the evidence to his conclusion, including when assessing subjective complaints. *See Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017). So failing to explain a credibility determination is a breach of that duty. *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) ("Though an ALJ's credibility determination may only be overturned if it is 'patently wrong,' a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." (internal quotations omitted)). That said, the parties assume that various observations the ALJ made throughout the opinion were reasons for questioning Baljo's credibility. The court will make the same assumption and evaluate those reasons accordingly. The court agrees with Baljo that several of those reasons are inconsistent with circuit precedent and not supported by substantial evidence.

1. **Activities of daily living**

The ALJ listed Baljo's activities of daily living, including meal preparation, doing laundry and other housework, grocery shopping, playing video games, using the internet, and playing chess. R. 32. In another section of the decision, the ALJ observed that Baljo had

3

reported that he was golfing two or three times a week. R. 34. The commissioner acknowledges that the ALJ didn't explain how any of these activities were inconsistent with Baljo's testimony, but the commissioner says that the inconsistencies are "reasonably discernible" from the decision. Dkt. 12, at 9 (citing *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 442 (7th Cir. 1990)). Specifically, the commissioner says that Baljo's ability to do household chores, shop for groceries, and play golf undermine Baljo's testimony that he had difficulty "doing labor." And Baljo's ability to shop, play chess and video games, and use the internet undermines his testimony that he has trouble concentrating.

If that was the ALJ's implicit reasoning, it isn't supported by substantial evidence. Baljo's testimony wasn't about "doing labor"; it was about walking, standing, and sitting for long periods of time. Playing golf frequently could undermine that testimony, but Baljo said that he stopped playing golf (more precisely, disc golf) in 2010, shortly after his onset date. R. 58–59. As for activities such as household chores and shopping, the court of appeals has "repeatedly warned against equating the activities of daily living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). This is both because an ability to perform a particular activity may not translate into an ability to work full time and because a claimant may perform an activity at home only because he has no other choice. *E.g., Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family member, and playing cards "do not establish that a person is capable of engaging in substantial physical activity"). Baljo didn't say that he was bed-ridden; he said that his ability to walk, stand, and sit was limited. Neither

4

the ALJ nor the commissioner explain how Baljo's testimony suggests that he can walk, stand, or sit longer than he says.

The commissioner also doesn't explain how Baljo's activities undermine his testimony about his ability to concentrate. Shopping and using the internet don't necessarily require the type of sustained concentration necessary to work full time. Perhaps playing chess and video games is more probative of ability, but Baljo didn't say that he could *never* concentrate. Rather, he said that his concentration was impaired several times a week, when he suffered from high and low blood sugar. Because the ALJ failed to explain how Baljo's activities of daily living are inconsistent with his testimony, the ALJ should not have relied on those activities to question Baljo's subjective complaints.

2.  **Earnings history**

The ALJ's decision includes the following sentence: "A spotty inconsistent earnings record even prior to [Baljo's onset date] also raises some issues concerning the claimant's commitment to maintaining full employment." R. 32. The ALJ didn't cite any evidence for that observation and didn't explain what he meant.

The commissioner says that the ALJ was justified in calling Baljo's work history "spotty" because his "earnings varied widely from year to year and his highest reported income was $11,631.12 in 2007." Dkt. 12, at 10. The commissioner cites two documents for that statement, *see* R. 252 and 261, but those documents don't support the commissioner's assertion that Baljo's earnings "varied widely." Rather, they show that Baljo generally earned annual wages between $ 8,000 and $10,000. Baljo's wages from 1997 to 2001 were significantly lower, but Baljo was under the age of 18 at the time, so that shouldn't be surprising.

It is true that Baljo's wages were generally low, but the jobs Baljo had (cashier at a gas station and short order cook) were not high-paying jobs. Neither the ALJ nor the commissioner have cited any evidence that Baljo was not either employed or looking for employment at all times or that Baljo was working fewer hours than were available to him. So the ALJ's reliance on Baljo's work history wasn't supported by substantial evidence.

3. **Compliance with treatment**

The ALJ's decision includes the observation that Baljo "has not always been fully compliant with medical treatment." R. 32. The ALJ doesn't explain the significance of that observation, but both sides assume that the ALJ was referring to a failure to comply with treatment for diabetes and that the ALJ relied on that failure to discount Baljo's subjective complaints.

Baljo says that the ALJ's observation isn't a fair representation because the record shows that Baljo was unable to control his diabetes even when he *was* complying with treatment. The commissioner doesn't deny that Baljo has been more compliant in recent years but says it doesn't matter because the ALJ didn't say that Baljo was *always* noncompliant. But it is not clear what point the commissioner is making. An observation that a claimant is not compliant with treatment could be relevant to show that the claimant's symptoms aren't as bad as he says they are (because otherwise he would seek treatment consistently) or that the claimant shouldn't be considered disabled under the law (because he could alleviate his symptoms if he chose). Because the commissioner doesn't dispute that Baljo's diabetes is uncontrolled even when he follows treatment instructions, his noncompliance at other times isn't probative of either a lack of serious symptoms or a stubborn refusal to seek relief for his symptoms. So the ALJ shouldn't have relied on Baljo's failure to consistently comply with his treatment protocol.

6

### 4. Improvement with treatment

The ALJ questioned the severity of Baljo's neuropathy, citing a medical record that Baljo's neuropathy symptoms "are better with the use" of a prescription drug. R. 32 (citing R. 1308). But that record says nothing about Baljo's functional limitations and does not otherwise indicate how much relief the drug provides. Without that information, the medical record simply isn't informative: "The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (concluding that the ALJ erred by relying on "statements that characterize [the plaintiff] as medically improving and 'neurologically stable'").

### 5. Conclusion

As discussed above, the ALJ's evaluation of Baljo's subjective complaints contained multiple errors. The ALJ will need to conduct a new evaluation on remand.

## B. Testimony of the vocational expert

When there appears to be an "obvious" conflict between the testimony of the vocational expert and the information provided in the *Dictionary of Occupational Titles*, the ALJ must ask the expert to reconcile the apparent conflict, even if the claimant doesn't object during the hearing. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing SSR 00-4p, at 5). Baljo contends that remand is required under the principle in *Overman* because the ALJ failed to ask the vocational expert to explain why he believed that Baljo could perform jobs such as cashier, information clerk, marker, inspector/sorter, which are all classified by the *Dictionary* as "light work." Baljo says that "light work" requires an ability to stand and walk for up to six hours of

7

an eight-hour work day, which is inconsistent with the ALJ's finding that Baljo can't walk or stand for more than two hours.

The commissioner denies that there was a conflict, apparent or otherwise. He cites Social Security Ruling 83-10, which states that "the full range" of light work requires standing and walking for approximately six hours a day. This implies that some jobs may qualify as light work even if they require fewer than six hours of walking or standing. In other words, the commissioner's position is that there is no apparent conflict unless the vocational expert testifies that a claimant is capable of performing a job that the *Dictionary* categorically defines as outside that claimant's RFC.

The parties' dispute raises the question of what qualifies as a "conflict" under *Overman* and Social Security Ruling 00-4 (on which *Overman* relied). Neither side cites authority addressing that issue. But the court need not resolve the dispute in this case because, as the commissioner points out, the vocational expert also testified that Baljo could perform multiple sedentary jobs, including account clerk, telephone clerk, and document preparer. R. 67. Because there are approximately 50,000 of each of those jobs in the economy, *id.*, any error by the ALJ in failing to question the vocational expert was harmless. *See Collins v. Berryhill*, 743 F. App'x 21, 25–26 (7th Cir. 2018) (ALJ's failure to resolve conflict regarding some of the jobs identified by the expert was harmless error when the expert identified other jobs that were available in significant numbers in the economy); *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016) (failure to resolve apparent conflict not fatal when at least 5,303 other appropriate jobs existed in the national economy).

In his reply brief, Baljo contends for the first time that there is also a conflict related to the sedentary jobs, but his argument isn't easy to follow:

8

> The hypothetical question provided that the hypothetical person would have to be able to change positions every 30 to 45 minutes for 3 to 5 minutes, e.g., the person would have to be able to stand. If you used the higher end of that scale, every 30 minutes, the person would have to stand for 5 minutes. That would equate to standing every half-hour for up to five minutes or 80 minutes per day. That would be 1 hour, 20 minutes in addition to the occasional standing that would be generally required in the occupation. The number would exceed the amount of standing required for sedentary occupations. Therefore, a conflict would exist, and harmless error could not be applied as the Commissioner asserts.

Dkt. 13, at 15. The court understands Baljo to be contending that his RFC allows him to stand more than three hours, but sedentary jobs require only up to two hours of standing, so there is a conflict between the vocational expert (who said that Baljo can perform sedentary jobs) and the *Dictionary* (which says that sedentary jobs require no more than two hours of standing). But that view makes little sense. If Baljo can stand *longer* than what his job requires, there is no need to resolve a "conflict." The purpose of the rule in *Overman* is to clarify whether the ALJ has adequately considered whether the claimant can in fact perform the job identified by the vocational expert. In this case, the expert and the *Dictionary* are in agreement that someone with Baljo's RFC can perform a sedentary job.

C. Conclusion

The court concludes that the ALJ failed to conduct an adequate evaluation of Baljo's subjective complaints. On remand, the ALJ must conduct a new evaluation, taking into consideration the court's rulings in this opinion. The ALJ's decision is otherwise affirmed.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of the Social Security Administration, denying plaintiff Kyle Baljo's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The oral argument scheduled for December 13, 2019, is CANCELED.

Entered December 3, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge